UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SANKAR PUNOO, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:13-cv-12209-IT |
| | * | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | * | |
| | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM & ORDER

December 4, 2015

TALWANI, D.J.

I. Introduction

Petitioner Sankar Punoo ("Punoo") filed the Petition [#8] in this action seeking judicial review of Respondent United States Citizenship and Immigration Services' ("USCIS") denial of his application for naturalization pursuant to 8 U.S.C. § 1421(c). USCIS has filed a Motion for Summary Judgment [#37] arguing that Punoo's Petition must be denied because he currently is statutorily precluded from establishing good moral character, a prerequisite for naturalization. For the reasons set forth below, USCIS's motion for summary judgment is ALLOWED.[1]

II. Factual Background

In June 2000, Punoo, a native and citizen of Guyana, applied for an immigrant visa to enter the United States as the unmarried, adult son of a lawful permanent resident. Resp't's Mot. Summ. J. Ex. B [#38]. At that time, he signed a statement at the United States Embassy in Guyana certifying that he was unmarried and therefore eligible for the immigrant visa for which

---

[1] Punoo's cross-motion for summary judgment was denied in a separate order.

he had applied.  Id.  On June 16, 2000, Punoo entered the United States on an immigrant visa, as the unmarried, adult son of a lawful permanent resident.  Resp't's Mot. Summ. J. Ex. C [#38].

On April 13, 2010, Punoo signed and submitted an N-400 application for naturalization form to USCIS.  Resp't's Mot. Summ. J. Ex. A [#38].  Section 8.F of Punoo's N-400 form states that he was married to Indranie Chandriah ("Chandriah") from March 4, 1991 until they were divorced on June 21, 2007.  Id.  Because Punoo could not read or write in English, Punoo's friend Jerome Ramsammy ("Ramsammy") prepared the N-400 form for him.  Resp't's Mot. Summ. J. Ex. N [hereinafter "Punoo Interview"] at 10:15-19 [#38-1].  Punoo provided Ramsammy all of the information necessary to complete the N-400 form, primarily by telling Ramsammy the information over the phone in their native language while Ramsammy completed the form in English.  Resp't's Mot. Summ. J. Ex. D [hereinafter "Punoo Dep."] at 52:9-53:15 [#38]; Reps't's Mot. Summ. J. Ex. E [hereinafter "Ramsammy Dep."] at 11:4-23[2] [#38].  After Ramsammy completed the N-400 form, Punoo picked it up from him, signed it, and had it mailed to USCIS.  Punoo Dep. at 47:7-9.

On July 14, 2010, Punoo was interviewed under oath by USCIS Immigration Services Officer Caroline Owusu ("Owusu") in connection with his application for citizenship (the "N-400 Interview").  Resp't's Mot. Summ. J. Ex. F [hereinafter "Owusu Decl."] ¶ 4 [#38-1].  The parties dispute what was said at this interview.

Following the N-400 interview, USCIS sent Punoo a letter dated November 21, 2010 requesting that he submit a copy of his marriage certificate and his divorce decree.  Resp't's Mot. Summ. J. Ex. G [#38-1].  On November 6, 2010, Punoo submitted a copy of a New York State Supreme Court, Queens County judgment of divorce in the matter of Indranie Punoo v. Sankar

---

[2] The copy of Ramsammy's deposition transcript provided with USCIS's motion lacks original page numbers.  The page numbers cited herein are the page numbers of the exhibit that contains the transcript excerpts.

Punoo, Index. No. 20597/06.  Resp't's Mot. Summ. J. Ex. H [#38-1]; Resp't's Mot. Summ. J. Ex. I [#38-1].  The divorce judgment is dated December 10, 2007 but states that an inquest was held in the matter on June 21, 2007—the date listed on the N-400 form as the date Punoo's marriage ended.  See Resp't's Mot. Summ. J. Ex. I.

On January 30, 2012, USCIS denied Punoo's application for naturalization "for failure to establish [his] lawful admission for permanent residence."  Resp't's Mot. Summ. J. Ex. J. [#38-1].  Specifically, the letter stated that the information Punoo provided on the N-400 form stating that he was married from March 4, 1991 until June 21, 2007 conflicted with the information he provided to a consular officer in June 2000 that he was not married at that time.  Id. at 2.

On or about March 1, 2012, Punoo filed an N-336 form with USCIS, administratively appealing the denial of his naturalization application.  Resp't's Mot. Summ. J. Ex. K [#38-1].  On September 13, 2012, Punoo was interviewed under oath by a USCIS Immigration Services Officer in connection with his administrative appeal (the "N-336 Interview").  Punoo Interview [#38-1].  During the N-336 Interview Punoo stated he was never married and that his N-400 form stated he was married because of a mistake his friend (Ramsammy) made.  Id. at 9:13-10:5.  Punoo further testified that at his N-400 Interview he had told Owusu he was divorced because he had a divorce paper that his girlfriend's lawyer had given him and he responded affirmatively that this paper was the "divorce decree."  Id. at 13:6-14:4.

On May 7, 2013 USCIS sent Punoo a letter affirming its January 30, 2012 decision and denying his application for naturalization.  Resp't's Mot. Summ. J. Ex. O [#38-1].  Punoo appealed that decision by filing the within petition on October 22, 2013.  Pet. [#8].  USCIS deposed Punoo under oath on November 21, 2014 in connection with this case (the "November 2014 Deposition").  Punoo Dep. [#38].  At his deposition, Punoo testified that he and Chandriah

had a "Hindu blessing ceremony" in Guyana on the date that is listed on his N-400 form as his date of marriage, but that it was not a marriage and he was clear with Owusu that he had never been married. Id. at 70:24-71:7. Punoo testified further that he had told Ramsammy the date that he and Chandriah began living together, but did not tell him that he and Chandriah were ever married. Id. at 56:9-24. Punoo then testified that he sent Ramsammy a "paper copy" from a court to help Ramsammy answer the question of when his marriage ended, but subsequently testified that he could not remember if he had sent Ramsammy any documents. Id. at 56:25-57:25; 59:12-25. Nonetheless, Punoo responded affirmatively when asked if Ramsammy got "all the information for the N-400" from Punoo. Id. at 53:11-15. Finally, Punoo testified that he was served a divorce complaint in 2006, but did not know what the document was or that he was being sued for divorce by Chandriah. Id. at 34:8-36:2. Indeed, Punoo testified that he did not know that a court had granted a divorce until his N-400 Interview and that he had not seen a copy of the divorce decree until after that interview. Id. at 47:23-48:13.

USCIS also deposed Ramsammy under oath on November 17, 2014. Ramsammy Dep. [#38]. Ramsammy confirmed that he did not talk to anyone other than Punoo to obtain information to put on the N-400 form, id. at 9:6-8, and that he obtained the date of Punoo's divorce from a "photocopy form" that Punoo sent him for the purpose of filling out the N-400 form. Id. at 11:4-12:7.

### III. Discussion

   *1. Summary Judgment Standard*

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue can be resolved in favor of either party. Calero-Cerezo

v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  A fact is material if it has the potential to affect the outcome of the case.  Id.  In reviewing a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in his favor.  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

   *2. Legal Standard*

Under the Immigration and Nationality Act, an applicant may only be naturalized if he:

> (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . , (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all periods referred to in this subsection has been and still is a person of good moral character. . . .

8 U.S.C. § 1427(a).  The burden of establishing eligibility for naturalization in every respect is on the applicant.  Berenyi v. Dist. Dir., Immigration & Naturalization Serv., 385 U.S. 630, 637 (1967).  Any "doubts 'should be resolved in favor of the United States and against the claimant.'"  Id. (quoting United States v. Macintosh, 283 U.S. 605, 626 (1931)).

An applicant is precluded from establishing the "good moral character" requirement of section 1427(a) if "during the period for which good moral character is to be established" he has provided "false testimony for the purpose of obtaining any benefits under [the INA]."  8 U.S.C. § 1101(f)(6); see also 8 C.F.R. § 316.10(b)(2)(vi); Restrepo v. Holder, 676 F.3d 10, 16 (1st Cir. 2012) ("[A] person found to have provided false testimony . . . is *per se* deemed to lack good moral character.").  "False testimony" is any oral statement made under oath "with the subjective intent of obtaining immigration or naturalization benefits."  Kungys v. United States, 485 U.S. 759, 779-80 (1988).  A statement need not pertain to a material fact in order to qualify as false testimony.  Kungys, 485 U.S. at 780 ("[Section 1101(f)(6)] denominates a person to be of bad moral character on account of having false testimony if he has told even the most immaterial of

5

lies with the subjective intent of obtaining immigration or naturalization benefits."). In determining whether an applicant has given false testimony with the subjective intent of obtaining immigration benefits, whether the applicant "eventually received benefits because of the false testimony is irrelevant; the statute only refers to statements made 'for the purpose of obtaining' any immigration benefits, not that resulted in such benefits." Ramos v. INS, 246 F.3d 1264, 1266 (9th Cir. 2001) (quoting 8 U.S.C. § 1101(f)(6)).

   3. *Analysis*

USCIS contends that Punoo testified falsely on numerous topics and is therefore incapable of demonstrating compliance with the good moral character requirement for naturalization. Specifically, USCIS argues that Punoo testified falsely over the course of his N-400 Interview, N-336 Interview and November 2014 Deposition concerning his marital status, his relationship to Ramsammy, and his knowledge of his alleged divorce.

For the purposes of this summary judgment motion the court takes the evidence in the light most favorable to Punoo, the non-movant, and does not resolve disputes of fact. Owusu declares that her notations on the N-400 form during Punoo's interview indicate that Punoo testified consistently with certain portions of that form, including that he was married at the time he came to the United States and was subsequently divorced. Owusu Decl. ¶¶ 3-5 [#38-1]. Punoo has maintained, however, that he did not tell Owusu that he was married and that if he did it was due to confusion. See Punoo Dep. at 71:4-10; Resp't's Mot. Summ. J. Ex. L (Punoo Aff'd) ¶¶ 11, 13 [#38-1]. On summary judgment, the court must accept Punoo's version of this N-400 Interview.

The transcripts of Punoo's N-336 Interview and Punoo's and Ramsammy's depositions, on the other hand, establish as undisputed facts that Punoo saw a copy of his divorce judgment

6

prior to submitting his N-400 form, but that he testified at his deposition that he did not see a copy until after his N-400 Interview.  First, Punoo testified at his N-336 interview that he confirmed to Owusu that he was divorced because he had "divorce papers" that his girlfriend's lawyer had given him and subsequently acknowledged that this was the "divorce decree."  Punoo Interview at 12:19-14:4.  Next, Punoo and Ramsammy both testified at their depositions that Punoo gave Ramsammy all the information necessary to complete the N-400 form and that Punoo sent Ramsammy a document to help answer the question about when Punoo's marriage ended.  Though Punoo subsequently testified that he could not remember for certain if he had sent Ramsammy papers related to the divorce before Ramsammy completed the N-400 form, he did affirm that Ramsammy got "all the information for the N-400" from Punoo.  Punoo Dep. at 53:11-15.  Thus, according to Punoo, the only way that Ramsammy could have known what to list as the date of Punoo's divorce was by Punoo telling him that information himself or by reviewing a copy of the divorce judgment Punoo sent him; in either case, and in accordance with Punoo's testimony at his N-336 Interview, he must have seen a copy of his divorce judgment prior to submitting the N-400 form.  However, during Punoo's November 2014 Deposition, he testified that he did not know the court had granted a divorce until his N-400 Interview and had not seen a copy of his divorce judgment until after that interview.  This testimony is simply implausible as Punoo had to have known about the divorce and seen the divorce judgment prior to submitting his N-400 form in order for the date of divorce to appear on the form.

    As this court noted in its order denying Punoo's motion for summary judgment, it may very well be that Punoo was never legally married to Chandriah and that he therefore was lawfully admitted for permanent residence.  Indeed, many couples have religious ceremonies that are not legal marriages.  It is also conceivable that the state court could have entered a judgment

7

of divorce for Punoo and Chandriah even if they were not married if that court was misinformed about the legal status of their relationship.  If that is in fact what happened to Punoo, it is understandable that he may not believe that the divorce was valid and would have had difficulty describing his marital status.  It is even possible that Punoo did not understand the import of the divorce, namely that the fact of a divorce decree implies that he was previously married, until his N-400 Interview.  However, Punoo's testimony that he had not seen a copy of the divorce judgment until after his N-400 interview cannot be attributed to confusion or misunderstanding, nor can it be squared with his and Ramsammy's testimony that Punoo was the source of all of the information on the N-400 form.

Moreover, the fact that the nature of Punoo's relationship to Chandriah was the basis for USCIS's initial denial of his application for citizenship demonstrates that his testimony given in the course of his naturalization proceedings regarding their divorce was given with the subjective intent of obtaining naturalization.  Accordingly, Punoo's false denial of any knowledge of the divorce or of having seen the divorce judgment was false testimony within the meaning of 8 U.S.C § 1101(f)(6) and precludes Punoo from establishing the good moral character requirement of 8 U.S.C § 1427(a) at this time.  Therefore, USCIS is entitled to summary judgment.

IV. Conclusion

For the foregoing reasons, USCIS's Motion for Summary Judgment [#37] is ALLOWED.

IT IS SO ORDERED.

Date: December 4, 2015                                              /s/ Indira Talwani
                                                                    United States District Judge